IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DEBBIE DOMINGO,<br><br>　　　　Plaintiff,<br><br>　　　　vs.<br><br>DIRECT MORTGAGE CORPORATION; CITIMORTGAGE, INC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; THE FEDERAL HOME LOAN MORTGAGE CORPORATION; and JOHN DOES I-X;,<br><br>　　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND ORDERING RELEASE OF LIS PENDENS<br><br><br><br>Case No. 2:11-CV-00464- TS |

　　　　This matter is before the Court on Defendants CitiMortgage, Inc.'s ("CitiMortgage"), Mortgage Electronic Registration Systems, Inc.'s ("MERS"), and Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).[1] For the reasons set forth below, the Court will grant the motion.

---

[1] Docket No. 5.

1

I.  STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[2] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[3] All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[4] But, the court "need not accept . . . conclusory allegations without supporting factual averments."[5] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6] The Supreme Court has explained that a plaintiff must "nudge[ ] [his] claims across the line from conceivable to plausible" to survive a motion to dismiss.[7]

> Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.[8]

---

[2] *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[4] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[5] *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7] *Twombly*, 550 U.S. at 547.

[8] *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Supreme Court recently provided greater explanation of the standard set out in Twombly in *Ashcroft v. Iqbal*.⁹ In *Iqbal*, the Court reiterated that, while Fed.R.Civ.P. 8 does not require detailed factual allegations, it nonetheless requires "more than unadorned, the-defendant-unlawfully harmed-me accusation[s]."¹⁰ "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"¹¹ "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"¹²

The Court in *Iqbal* stated:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should

---

⁹ 129 S.Ct. 1937 (2009).

¹⁰ *Id*. at 1949.

¹¹ *Id*. (quoting *Twombly*, 550 U.S. at 555).

¹² *Id*. (quoting *Twombly*, 550 U.S. at 557).

3

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[13]

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[14] Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[15]

## II. FACTUAL BACKGROUND

Plaintiff's Complaint alleges that, on or about February 4, 2004, Plaintiff's father obtained a refinance loan in the amount of $118,500.00 through Direct Mortgage Corporation.[16] The loan was secured by a Deed of Trust recorded against real property located in Midvale, Utah ("the Property").[17] The Deed of Trust designates Defendant MERS as the beneficiary to act as

---

[13] *Id.* at 1949-50 (internal quotation marks and citations omitted).

[14] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 & Supp. 2007)).

[15] *Alvarado v. KOBTV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[16] Docket No. 2-1, at 9.

[17] Docket No. 2-1, Ex. A, at 1.

4

"nominee for Lender and Lender's successors and assigns."[18] In defining MERS authority under the Deed of Trust, the Deed provides:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.[19]

After Plaintiff's father's death, his Estate executed a Personal Representative's Deed transferring the Property to Plaintiff.[20] In early 2010, Plaintiff defaulted on the loan by failing to make payments as required by the loan. Plaintiff contacted CitiMortgage regarding assistance with the loan. CitMortage informed Plaintiff that she may qualify for government assistance. Plaintiff provided the documentation CitiMortgage requested and submitted an application. After review, CitiMortgage informed Plaintiff that the loan modification under the Make Home Affordable program was denied. Plaintiff was also denied an "in-house" modification. Following Plaintiff's default, MERS initiated foreclosure proceedings.

On June 17, 2010, Direct Mortgage Corporation assigned the Trust Deed to CitiMortgage.[21] Shortly thereafter, CitiMortgage recorded a Substitution of Trustee appointing eTitle Insurance Agency as Successor Trustee.[22] On the same day, eTitle recorded a notice of

---

[18] *Id*.

[19] *Id*. at 3.

[20] Docket No. 2-1, Ex. C.

[21] *Id*. at Ex. G.

[22] *Id*. at Ex. H

default indicating that Plaintiff was in default on her obligations under the Deed of Trust.[23] The Property was sold to Freddie Mac at a foreclosure sale on March 21, 2011.[24]

On April 13, 2011, Plaintiff filed suit in state court, seeking both monetary and declaratory relief. This action is brought before this Court on removal from state court. On May 31, 2011, Defendants moved this Court to dismiss the Complaint for failure to state a claim.

III. DISCUSSION

Plaintiff's Complaint alleges claims for quiet title, declaratory judgment, injunctive relief, breach of contract, breach of covenant of good faith and fair dealing, promissory estoppel, and wrongful foreclosure. Each of these claims will be discussed below.

A. QUIET TITLE/DECLARATORY JUDGMENT

Plaintiff's first claim for relief alleges that foreclosure of the Property violated Utah law because the Defendants did not have authority to foreclose and sell the Property. Plaintiff's claim is premised on the argument that MERS cannot be named as a beneficiary in the Trust Deed, or, in the alternative, the action of naming MERS as a beneficiary converted the Trust Deed into a mortgage that could not be non-judicially foreclosed and sold. The Court agrees with Defendants that Plaintiff's quiet title claim is based on the oft-rejected argument that MERS lacks standing to authorize the assignment and resulting foreclosure.[25]

---

[23] *Id*. at Ex. I.

[24] Docket No. 2-1, ¶ 57.

[25] *See Foster v. BAC Home Loan Servicing, L.P.*, 2010 WL 3791976, at *3 (D. Utah Sept. 22, 2010); *Burnett v. Mort. Elec. Registration Sys., Inc.*, 2009 WL 3582294, at *4 (D. Utah Oct. 27, 2009).

In *Burnett*, this Court interpreted an identical provision, naming MERS as beneficiary, and found that "MERS had the authority to initiate foreclosure proceedings, appoint a trustee, and to foreclose and sell the property."[26] This case requires the same result.

This conclusion is not changed by Plaintiff's argument that Defendants are no longer parties in interest because the underlying note was securitized. Plaintiff's securitization claim has similarly been repeatedly rejected by this Court.[27]

A quiet title claim seeks to extinguish interests in the property in favor of the interest of the plaintiff. Here, Plaintiff is seeking to extinguish the Trust Deed. "To succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not the weakness of a defendant's title or even its total lack of title."[28] Plaintiff fails to assert her own claim to title. She does not allege that the Deed of Trust was not validly executed or that she is not in default under the note. Accordingly, the court rejects Plaintiff's argument and dismisses this claim.

---

[26] *Burnett*, 2009 WL 3582294, at *4.

[27] *Foster*, 2010 WL 3791976, at *3; *West v. Mort. Elec. Registration Sys., Inc.*, 2011 WL 1321404, at *5-6 (D. Utah April 6, 2011).

[28] *Collard v. Nagle Constr.*, 57 P.3d 603, 607 (Utah 2002) (quoting *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048-49 (Utah 1983)).

### B. BREACH OF CONTRACT

Plaintiff's claim for breach of contract asserts that she relied on Defendant's representation that a loan modification agreement would be reached or handled in a reasonable manner and that a contract was thereby formed.[29]

As an initial matter, the Court notes that there is no private right of action under the Home Affordable Mortgage Program ("HAMP"). The Complaint shows that the loan modification Plaintiff applied for was through the HAMP program.[30] To the extent Plaintiff argues that she is entitled to modification under HAMP, her claim must be rejected.[31]

Utah law states that parties seeking to modify a contract must reach a meeting of the minds on the modification.[32] "A binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of [the] agreement and that the terms are sufficiently definite as to be capable of being enforced."[33] Plaintiff's Complaint does not suggest what these terms were. It is not possible to create an enforceable contract in which the parties generally agree to modify another contract that has definite terms. No allegations reflect that the

---

[29] Docket No. 2-1, ¶ 101.

[30] Docket No. 2-1, Ex. F.

[31] *Shurtliff v. Wells Fargo Bank, N.A.*, 2010 WL 4609307, at *3 (D. Utah Nov. 5, 2010); *Marks v. Bank of Am., N.A.*, 2010 WL 2572988, at *5-6 (D. Ariz. June 22, 2010).

[32] *See Osmond v. Litton Loan Servicing, LLC*, 2011 WL 1988403, at *2 (D. Utah May 20, 2011); *Nielsen v. Gold's Gym*, 78 P.3d 600, 602 (Utah 2003) (internal quotations omitted).

[33] *LD III, LLC v. BBRD, LC*, 221 P.3d 867, 872 (Utah Ct.App. 2009) (quotation marks and citations omitted).

Trust Deed documents of the loan were modified in writing relative to a loan modification or that the terms of such modification were sufficiently certain. For these reasons, this claim fails.

### C. BREACH OF GOOD FAITH AND FAIR DEALING

Plaintiff alleges CitiMortgage breached the covenant of good faith and fair dealing during the loan modification process by "purposely or intentionally destroying or injuring the Plaintiff's right to receive the fruits of that contract."[34] Plaintiff alleges such actions include moving forward with foreclosure, and failing to communicate and provide clear information during the loan modification process.

Every contract is subject to an implied covenant of good faith.[35] Plaintiff asserts a valid contract existed, namely, the "agreement that Plaintiff would apply for and cooperate with, and CitiMortgage would consider, Plaintiff's application for a modification of the loan"[36] In *Strupat* v. *Aurora Loan Services LLC*,[37] the court found that, although the plaintiff claimed the defendant acted in bad faith with respect to a purported new contract in connection with his loan modification, the claim failed because plaintiff failed to show either the existence, or the creation, of any such contract.[38] As discussed above, the Court has not found an existing contract. Absent a contract, there can be no breach of any implied duty. Therefore, this cause of action fails.

---

[34] Docket No. 2-1, ¶ 114.

[35] *Brehany v. Nordstrom*, 812 P.2d 49, 66 (Utah 1991).

[36] Docket No. 2-1, ¶ 112.

[37] 2011 WL 2359842 (D. Utah June 9, 2011).

[38] *Id*. at *10.

D. PROMISSORY ESTOPPEL

Plaintiff's allegations regarding promissory estoppel appear to be that she reasonably relied on CitiMortgage's promise to properly consider her application for a loan modification, which she asserts they did not do. Plaintiff alleges that she did what was required of her, but that CitiMortgage failed and refused to consider her loan modification application in a commercially reasonable manner.[39]

Promissory estoppel requires a showing of the following elements:
(1) the plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.[40]

Plaintiff cannot meet the reasonable reliance requirement of her promissory estoppel claim. This Court agrees with Defendants that the Plaintiff failed to allege she relied on any such promise or that she suffered a loss. Plaintiff was in default on her loan. The well-pleaded facts alleged simply reflect that CitiMortgage considered, and ultimately denied, Plaintiff's application for loan modification.[41] Therefore, this claim fails.

---

[39] Docket No. 2-1, ¶ 105-109.

[40] *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007).

[41] Docket No. 2-1, ¶ 37-39.

### E. INJUNCTIVE RELIEF

Plaintiff seeks injunctive relief. However, this claim is dependent on Plaintiff's substantive claims which, as discussed above, fail to state a claim upon which relief can be granted. Therefore, Plaintiff's request for injunctive relief will be denied.

### F. WRONGFUL FORECLOSURE

Plaintiff also brings a claim for wrongful foreclosure against the Defendants. Utah law, however, does not recognize a cognizable claim for wrongful foreclosure.[42] Even if Utah law recognized such a claim, this claim is premised on Plaintiff's previously rejected arguments. Therefore, this claim fails.

### G. LIS PENDENS

As part of their motion to dismiss, Defendants request that the Court order the release of the lis pendens filed by Plaintiff in connection with this action. A court should order a release of lis pendens if it "finds that [Plaintiff] has not established by a preponderance of the evidence the probable validity of the real property claim that is the subject of the notice."[43] The Court has concluded that all of Plaintiff's claims in this case fail. Accordingly, Plaintiff has no basis for a lis pendens, and any such lis pendens filed in connection with this action shall be released.

## IV. CONCLUSION

It is therefore ORDERED that Defendants' Motion to Dismiss (Docket No. 5) is GRANTED. Plaintiff is ordered to release the lis pendens filed in connection with this case. The clerk of Court is directed to close this case forthwith.

---

[42] *Cannon v. Countrywide Bank*, 2010 WL 3938246, at *2 (D. Utah Oct. 5, 2010).

[43] U.C.A. § 78B–6–1304(2)(b).

DATED   September 21, 2011.

                    BY THE COURT:

                    _____
                    TED STEWART
                    United States District Judge